FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2013 OCT 28 P 4: 13

CLERK'S OFFICE
AT BALTIMORE

DEPUTY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES CALHOUN-EL, # 160-083 | * | |
| Plaintiff | * | |
| v | * | Civil Action No. RDB-12-3390 |
| J. MICHAEL STOUFFER, et al. | * | |
| Defendants | * | |

***

## MEMORANDUM OPINION

Pending is self-represented Plaintiff James Calhoun-El's Complaint under 42 U.S.C. § 1983 (ECF No. 1). Defendants, Commissioner J. Michael Stouffer, Assistant Commissioner Randall Watson,[1] Warden Bobby Shearin, Chief of Security Keith Arnold, Lt. Jason Harbaugh, Lt Calvin Jones, CO II Ricky Bauer, CO II Roman Yoder, CO II Nancy Kegg, CO II, Christopher Preston, CO II Sharon Skelley, CO II Jeffrey Grabenstein, Sgt. Robert Harris, and Chaplain Kevin Lamp,[2] by their counsel, have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment with affidavits and verified exhibits. ECF No. 23. Calhoun-El has filed a Reply with a declaration and exhibits. ECF No. 29. No hearing is needed to resolve the issues presented. *See* Local Rule 106.5 (D. Md. 2011). For reasons to follow, the claims against Defendants Ryce, Seaford, and Watson ARE DISMISSED and the remaining Defendants' Motion for Summary Judgment IS GRANTED.

---

[1] Defendants Stouffer and Watson are sued in their official capacities. The remaining Defendants are sued in their individual capacities.

[2] Defendants J.A. Ryce and Seaford were not served. It is apparent that Calhoun-El's claim against them is unavailing for the reasons discussed herein. *See infra* pp. 2, 12-14.

**BACKGROUND**

In this Complaint, Calhoun-El, an inmate at the North Branch Correctional Institution (NBCI) in Cumberland, Maryland, claims Defendants hindered his religious practice. Calhoun-El, who identifies himself as member of the Moorish Science Temple of America, presents allegations concerning his headdress, Ramadan observance, and celebration of an unspecified religious holiday. ECF No. 1 at 9-13; ECF No. 29 at 20. As redress, he seeks declaratory relief, compensatory and punitive damages, and unspecified equitable relief. *Id.* at 15.

## I. Plaintiff's Allegations

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris,* 550 U.S. 372, 378 (2007); *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). That review liberally construes Plaintiff's pleadings in light of the fact that he is proceeding pro se.

### A. Headdress

Calhoun-El claims that Defendants' confiscation of his headdress on four different occasions was "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, [and] signif[ied] degradation and submission." *Id.* at 9-10. Notably, Calhoun-El does not assert how the alleged removal of the headdress violated his practice of religion.

Calhoun-El's first allegation is that at 8:30 a.m. on an unspecified date, Defendant Jones removed Calhoun-El's religious headdress. His second allegation is that on June 22, 2011, he asked officers Defendants Seekford and Ryce to return a religious headdress, but they answered that a black headdress was not permitted at the Maryland Correctional Training Center, where

Calhoun-El was temporarily housed. Third, Calhoun-El alleges that on September 13, 2011, Defendants Bauer and Yoder confiscated his religious headdress because it was "homemade." Lastly, Calhoun-El avers that on September 14, 2012, Defendant Harris allegedly confiscated a black headdress because it was deemed an unacceptable color to wear on a court trip. Calhoun-El filed an Administrative Remedy Procedure ("ARP") in regard to the September 14, 2012, which he later withdrew when it was determined that prisoners were permitted to wear a headdress of any color to court.

**B. Ramadan**

Calhoun-El alleges that when housed in a contingency cell on July 29, 2011, he informed Defendants Preston, Skelley and Grabenstein that he had a right to "participate in the Ramadan fasting," but they denied his request. He claims that he "appeal[ed] his grievance" to Defendants Watson, Shearin, Arnold, Harbaugh and Pennington," but his request was denied. ECF No. 1 at 12.

Defendants respond that to the extent Calhoun-El claims he was unable to join with other prisoners in a group meal after sunset while confined in a contingency cell in the segregation housing unit, his claim implicates matters of institutional security. Defendants note Calhoun-El fails to explain how his confinement in a contingency cell infringed on his ability to observe the Ramadan fast, which can be observed simply by not eating until after sundown.

Calhoun-El next alleges that on or about August 31, 2010, he asked Defendants "Marsh[3] and Kegg" to open the cell door so he could "participate in the Ramadan fast," but they told him he had been "removed from the Ramadan list." *Id.* at 12. Defendants respond that Calhoun-El fails to state how this isolated incident infringed on his ability to practice his religion. Defendants

---
[3] Officer "Marsh" has neither been identified nor served with the Complaint.

3

assert the incident was attributable to clerical error because Calhoun-El had not been removed from the Ramadan list and participated in every evening meal thereafter. Calhoun-El acknowledges that on September 1, 2010, he was permitted to leave his cell for Ramadan fasting. ECF No. 29 at 19.

### C. Religious Holiday

Calhoun-El alleges that on or about January 8, 2009, he told Defendant Lamp and former Warden Rowley, who is not named as a defendant, that he "ha[d] a religious right to celebrate his religious holiday," but his request was denied. Calhoun-El does not specify the name of the holiday, nor how this incident violated his practice of religion.[4]

## II. Defendants' Response

Defendants' declarations and verified records filed in support of their dispositive motion provide the following information.

### A. Declaration Of Chaplain Lamp

Kevin Lamp ("Lamp"), Administrative Chaplain for North Branch Correctional Institution, attests that inmates who practice Moorish Science, which he describes as a branch of Islam, may practice their religion while incarcerated in a number of ways. ECF No. 23, Exhibit A, ¶3 and Attachment (Division of Correction (DCD) Manual 140-001, "Religious Services Manual"). Lamp states is the policy of the Department of Public Safety and Correctional Services to afford Muslim inmates the opportunity to exercise their religious beliefs to the fullest extent possible consistent with institutional security and budgetary constraints. *Id.*, ¶ 4. Inmates are given one celebratory meal annually, which tends to be done for the observance of the holiday of Eid-ul Fitr. *Id.* at ¶ 3. Additionally, there is group Jum'ah worship every Friday, and

---
[4] It is presumed that Calhoun-El wanted to observe the Prophet's Birthday celebration. *See infra* pp.6-7.

the holiday of Eid-ul-Adha is observed. *Id.* During Ramadan when Islamic inmates fast during daylight hours, there are daily services, early morning meals, and late meals or "fasting bags" are provided to enable inmates to keep meals in their quarters for consumption after dark. *Id.* Inmates are permitted Islamic clothing, prayer rugs and reading materials, among other religious property. *Id.*, DCD Manual, at 15.

Lamp attests there is no requirement in Moorish Science that adherents wear head coverings. *Id.* at ¶ 5. Many Moorish Science members, however, wear a cloth hat called a "crown" or a red fez as a sign of their adherence. *See id.* [5] Crowns may be purchased by Moorish Science inmates. *Id.*, ¶ 6. A request is sent to the Chaplain's Office for approval, then forwarded to be processed. Inmates are advised to keep the receipts for the crowns as proof of purchase. *Id.* As a matter of institutional security, crowns may not be homemade because the garments can be unraveled and the threads used to make ropes or string lines for "kites," to pass contraband or notes between cells. *Id.* ¶ 7. Homemade white crowns, such as one confiscated from Calhoun-El in this case, are usually fashioned from kitchen whites, which are the property of the State of Maryland. *Id.*

Lamp states that there is no requirement in Moorish Science that a crown be a particular color. *Id.*, ¶ 8. Several years ago there was a general prohibition against inmates wearing black clothing because black was a gang-related color and correctional uniforms were black. The concern was that black clothing could be altered to resemble an officer's uniform and facilitate escape or impermissible prison movement. *Id.* Although there was an exception to the

---

[5] Crowns are allowable personal property under DCD Manual 140-001. ECF No. 23, Exhibit A, Attachment at 16. In his Reply, Calhoun-El states the crown, Ramadan fasting, and the celebration of the Prophet Noble Drew Ali's Manifestation Day are religious "tenets," but fails to dispute that crowns are not required for Moorish religious practice. ECF No 29 at 19. Calhoun-El asserts only kufis for Sunni Muslems, not crowns, are sold in the prison commissary. *Id.* at 4.

5

prohibition against black clothing for religious headwear, some line officers were unaware of the exception, a situation which has since been corrected. Lamp indicates that misunderstanding apparently gave rise to several of the allegations Calhoun-El now presents. *Id.*

Regarding Calhoun-El's Ramadan fast claim, Lamp attests that he knows of no reason why confinement in a contingency cell or any other cell would interfere with an inmate's ability to observe Ramadan by fasting until sundown. *Id.*, ¶ 9.

Lamp states that insofar as Calhoun-El intends to complain he was not allowed to observe Prophet's Day on January 8, 2009, NBCI has not yet recognized Moorish Science as an official religious group, so there was no provision for the holiday. *Id.*, ¶ 10. Having completed the process of obtaining recognition, Moorish Science is now an official group and Prophet's Day is observed by NBCI's Moorish Science members with a meal and a religious service. *Id.*

### B. Declaration Of Lt. Harbaugh

Lieutenant Harbaugh ("Harbaugh") is former manager of Unit 1, the disciplinary or administrative segregation housing unit at NBCI, and recalls Calhoun-El was assigned to the unit during the time he served as unit manager. ECF No. 23, Exhibit B ¶¶ 1-2. Harbaugh attests:

> Plaintiff's contention that he should have been permitted to leave a contingency cell in Housing Unit 1, the segregation unit, to attend a Ramadan service is not correct. Due to his segregation status, whether administrative or disciplinary, Plaintiff did not have permission or license to move about the prison complex freely. Wherever such prisoners went, it was required that they be escorted by security staff. Id. Contingency cells were used at the time to house prisoners who had refused to accept an assigned cell, and the prisoners were kept there until they agreed to accept housing. While in the contingency cell, prisoners were not free to attend group gatherings. [internal citations omitted].

*Id.*, ¶ 4. Further, Harbaugh states Muslim prisoners in contingency cells were provided dinner after sunset so they could observe the Ramadan fast, and "[i]f Plaintiff is alleging that he was not allowed to fast from sunrise to sundown, he is mistaken." *See id.*

### C. Administrative Remedy Procedure

Calhoun-El filed ARP-NBCI-2801-12 after he was told he had been removed from the Ramadan list and was therefore not permitted to leave his cell to attend an evening Ramadan event. After investigation, corrections officials determined there had been a clerical error and Calhoun-El attended all remaining evening Ramadan sessions without incident. ECF No. 23, Exhibit C at 42-59. Calhoun-El later withdrew the ARP request he filed concerning the incident "because he felt the issue has been corrected." ECF No. 29 at 21.

In ARP-NBCI-0064-09, Calhoun-El complained he was not permitted to observe the Prophet's Birthday. It was investigated and determined on September 23, 2009, to have merit in part. ECF No. 23, Exhibit C at 3, 10 and 21. Calhoun-El was notified the group was not authorized to meet at the time of the holy day in question. *Id.* at 12. Upon completion of the institutional recognition process, the group was provided the opportunity to select three holy days to observe during the calendar year. *Id.* Prophet's Day is observed by NBCI's Moorish Science members with a meal and a religious service. *See supra* p. 6.

## STANDARD OF REVIEW

### I. Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of

7

a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir.2006). (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, this Court "need not accept the legal conclusions drawn from the facts, and [ ] need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation marks and citation omitted).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's decision in *Twombly* articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. Id. (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim). Second, a complaint must be dismissed if it does not allege a "plausible" claim for relief. *Id.* at 678–79 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

## 2. Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' " *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir.2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Scott* 550 U.S. at 378 (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted). At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson* 551 U.S. at 94; *Cruz v. Beto*, 405 U.S. 319 (1972). The requirement of liberal construction does not mean the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social*

9

*Services*, 901 F.2d 387, 391 (4th Cir. 1990). The Court cannot assume the existence of a genuine issue of material fact where none exists. Fed.R.Civ.P. 56(c).

## ANALYSIS

The Complaint is filed pursuant to 42 U.S.C. § 1983, which " ' is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). A suit under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Defendants assert Calhoun-El's claim against Defendant Lamp is time-barred and Defendants Stouffer and Watson are immune from suit for damages the Eleventh Amendment. Further, Defendants aver that Calhoun-El's generally stated claims fail to demonstrate abridgement of his rights under the First and Fourteenth Amendments. ECF No. 1 at 14.

### I. Chaplain Lamp

Defendants raise the statute of limitations as a defense in regard to Calhoun-El's sole claim against Lamp. Calhoun-El claims that on January 8, 2009, he informed Lamp of his "religious right to celebrate his religious holiday," presumably Prophet's Day. *See supra* p. 4. The limitations period that is applied in § 1983 claims is the general or "residual" statute of limitations governing unenumerated intentional torts in the state where the cause of action arose.

*See Wallace v. Kato*, 549 U.S. 384, 389 (2007); *Owens v. Okure*, 488 U.S. 235, 236 (1989) (citing and expanding upon rule announced in *Wilson v. Garcia*, 471 U.S. 261 (1985)). In Maryland, the statute of limitations under § 1983 is three years. *See* Md.Code (2013 Repl. Vol.), § 5-101 of the Courts & Judicial Proceedings Article (general three-year statute of limitations under Maryland state law); *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999) (stating claims under § 1983 "borrow the state's general personal injury limitations period, which in Maryland is three years").

"While the time limitation itself is borrowed from state law, the federal rule fixes the time of accrual of a right of action." *Bireline v. Seagondollar*, 567 F.2d 260, 263 (4th Cir. 1977) (citing *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)). "This federal rule establishes as the time of accrual that point in time when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.*

In this case, Calhoun-El knew or had reason to know of the injury alleged on the same day he was not permitted to observe the Prophet's Day. Indeed, Calhoun-El's filing of an ARP on January 12, 2009, concerning this occurrence evidences his awareness of the purported injury. ECF No. 23, Exhibit C at 3. Calhoun-El filed the instant § 1983 Complaint on November 19, 2012; thus; this claim for injuries sustained before November 20, 2009, was filed outside of the applicable statute of limitations period, and is untimely.

## II.     Eleventh Amendment Immunity

As earlier noted, Defendants Stouffer and Watson are sued in their official capacities. The Eleventh Amendment bars suit in federal court, absent consent, against a state by its own citizens. *See Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001).

While the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, *see* Md. State Gov't Code Ann., § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. The Eleventh Amendment also bars suits against a state official in his official capacity where, as here, the suit is essentially to recover money from the state. In such cases, state officials may invoke Eleventh Amendment immunity because the state is the real party in interest. Thus, the claims against Stouffer and Watson will be dismissed because they are barred by the Eleventh Amendment.

### III. Supervisory Liability

Calhoun-El's claims with regard to Stouffer and Watson are based on their supervisory positions as neither Defendant appears to have been personally involved in the matters at issue. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.' " *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence: 1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; 2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and 3) there was an affirmative causal link between the supervisor's inaction

12

and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The Complaint fails to forth such allegations, and there is no evidence to suggest Stouffer or Watson had actual or constructive knowledge of the matters at issue here. Consequently, Stouffer and Watson are entitled to summary judgment in their favor as a matter of law.

Similarly, Defendants Shearin, Arnold, Harbaugh and Pennington do not appear to have personally participated in the matters at issue. Calhoun-El faults them for disagreeing with his objection to observing the Ramadan fast in his cell. Calhoun-El provides neither alleges nor provides facts to support suggestion that these supervisors had actual or constructive knowledge that subordinates engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens such as Calhoun-El.

### IV. Religious Practice

The Free Exercise Clause of the First Amendment applies to the states by virtue of the Fourteenth Amendment. *See Employment Division v. Smith*, 494 U.S. 872, 876-77 (1990). It provides that "Congress shall make no law ... prohibiting the free exercise" of religion. U.S. Const. Amend. I. A prisoner, however, does not enjoy the full range of freedoms as those not incarcerated; rather, state action violates a prisoner's constitutional rights if it burdens a prisoner's religious rights and is not reasonably related to a legitimate peneological interest. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for

the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972). That right is not unfettered. Prison restrictions that impact on the free exercise of religion but are related to legitimate penological objectives do not run afoul of the constitution. *See Turner*, 482 U.S. at 89-91.

The test to determine if the restrictions are justified requires examination of whether there is a rational relation between the asserted governmental interest and the regulation in question. In addition, this court must examine: whether there are alternative means of exercising the right asserted; whether accommodation of the right will impact on the orderly operations of the prison; and whether readily available alternatives to the regulation would be less restrictive. *See id.*

An additional consideration in this case is the standard provided by the Religious Land Use and Institutionalized Persons Act (RLUIPA). The Act provides in part that:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). RLUIPA establishes a statutory protection for the free exercise of religion that exceeds the requirements of the Free Exercise Clause of the First Amendment. *See Madison v. Virginia*, 474 F.3d 118, 127 (4th Cir.2006) (stating that RLUIPA "requires the States to provide prisoners with religious accommodations that are not compelled by the Constitution"). " 'RLUIPA adopts a ... strict scrutiny' standard." *Couch v. Jabe,* 679 F.3d 197, 203 (4th Cir. 2012) (quoting *Lovelace v. Lee,* 472 F.3d 174, 198 n. 8 (4th Cir. 2006)). Under RLUIPA, the "plaintiff bears the burden of persuasion on whether the policy or practice substantially burdens his exercise of religion. If the plaintiff satisfies this requirement, the government must then prove

that the challenged policy is the least restrictive means of furthering a compelling governmental interest." *Couch*, 679 F.3d at 200 (internal citations omitted).

Calhoun-El fails to provide specific facts to show how the isolated incidents about which he complains substantially impeded his ability to practice his religious beliefs, and falls far short of demonstrating that Defendants substantially burdened his First Amendment rights. The confiscation of Calhoun-El's crowns were discrete incidents, the result of mistakes by officers who were unaware of an exemption for religious headwear or because the crowns were homemade and considered contraband. Calhoun-E's alleged "removal" from the Ramadan list appears to have the result of a clerical error, was promptly corrected, and he proceeded to attend Ramadan evening events. Calhoun-El's confinement in a contingency cell was a matter of prison disciplinary management, and Calhoun-El provides no reason why he could not observe the fast in the cell.

Calhoun-El fails to assert specific facts to show substantial impediment of his ability to exercise his faith. His conclusory and unsubstantiated assertions do not meet his burden to show a policy or practice substantially burdens his exercise of religion. Because Calhoun-El has failed to meet his burden of persuasion, Defendants need not prove that the practice or policy at issue is the least restrictive means of furthering a compelling government interest. *See Couch*, 679 F.3d at 200.[6]

## CONCLUSION

Even when viewed the evidence in the light most favorable to him and all justifiable inferences are drawn in his favor, Calhoun-El's claims are factually unsupported and no genuine

---

[6] As RLUIPA's protection exceeds the requirements of the Free Exercise Clause, Calhoun-El likewise has failed to establish his First Amendment claim.

issue of material fact is presented.[7] Accordingly, Defendants' Motion for Summary Judgment will be granted. Judgment will be entered in favor or Defendants by separate Order to follow.

October 28, 2013  
Date

RICHARD D. BENNETT  
UNITED STATES DISTRICT JUDGE

---

[7] To the extent Calhoun-El uses the Reply to introduce new arguments that his religious headdress and his dental floss were improperly confiscated on May 31, June 3, and August 8, 2013, these allegations will not be considered here. ECF No. 29.